## Wojnar et ux. v. Yale & Towne Manufacturing Co., Inc.

*J. Leon Rabben,* for complainants.
*Charles H. Hassert,* for respondent.

LEVINTHAL, J., December 23, 1942.—

### Pleadings and issues

Complainants' amended bill seeks an injunction to restrain the respondent from conducting operations at the southeast corner of Tacony and Duncan Streets, Philadelphia, in such a manner as to produce unreasonable noise, vibration, and the draining of water into complainants' cellar. The respondent avers that the construction of a warehouse on the said premises has resulted in the practical elimination of what had previously disturbed the complainants. In their reply the complainants deny this, and further allege that the warehouse was constructed pursuant to an illegal building permit.

The pleadings and evidence adduced at the trial give rise to the following

*Findings of fact*

1. The complainants, Jan Wojnar and Maryanna Wojnar, his wife, are the owners of the premises 2306 Duncan Street, in the City of Philadelphia, and have held title to said premises since 1924.

2. The respondent, Yale & Towne Manufacturing Company, Inc., manufactures industrial handling equipment and for the purpose of its business operates a large factory with an office at 4530 Tacony Street.

3. The respondent company maintains a warehouse at the southeast corner of Tacony and Duncan Streets adjoining the complainants' property.

4. The warehouse is used to store castings and is necessary to the efficient operation of respondent's manufacturing business.

5. The area bounded by Melrose, Duncan, Tacony, and Church Streets is classified as an industrial section.

6. Since the construction of the warehouse on the premises by the respondent the noise at night has been completely eliminated and the noise during the day considerably lessened.

7. The noise now emanating from the respondent's warehouse is only that which is incident to the moving of castings and other materials stored there, said activity being necessary for the successful operation of the respondent's manufacturing business in that neighborhood.

8. In the construction of the warehouse and in the operation thereof, the respondent has taken reasonable precautionary measures to prevent the drainage of water from respondent's premises onto complainants' land.

9. The respondent company is filling contracts valued at $10,000,000, employs 2,100 men on a 20-hour-per-day basis and is engaged entirely in work for the United States Government in its war production program.

## Discussion

The complainants have an interest in the free use and enjoyment of their property, and it is entitled to protection. In prior hearings concerning a preliminary injunction, before the warehouse was actually constructed, the respondent was requested by the court to try to eliminate some of the noise. No injunction was then granted, for though the court sympathized with the plight of the complainants it was not thought sufficiently grave to call for a decree which would impede the operations of a large industrial plant, a vital cog in the war effort of our country. Since those hearings the testimony clearly shows that the noise during the night has been completely eliminated and during the day the disturbance has been considerably lessened. Throughout the proceedings the officers of the respondent company have shown a willingness to exert every reasonable effort to minimize the discomfort of the complainants. It now appears that the noise that still persists is but an unavoidable incident to the successful operation of the respondent's manufacturing business.

The appropriateness of the remedy of an injunction against a nuisance depends upon an appraisal of all the factors in the case. Very significant among these, of course, is the complainants' interest in the free use and enjoyment of their property. To be considered with this is the relative hardship likely to result to the respondent if the injunction be granted and to the complainants if it be denied. It may be argued that the interference with the enjoyment of one's home may amount to a greater hardship than the curtailment of the operations of a $10,000,000 manufacturing establishment. Without answering the question as it relates to the facts of the instant case, a third factor, the public interest, appears to tip the scales completely in favor of the respondent.

"The interests of third persons and of the public are factors to be considered in determining the appropri-

ateness of injunction against tort": A. L. I. Restatement of Torts, §942.

In ordinary times this public interest may be considered a make-weight factor, on the ground that the shutting down of an industrial plant would depress the purchasing power of the workers in the community as well as cut the taxes to be collected by that community. Today, with the vital interest of the Nation in continued and uninterrupted war production, this factor takes on added significance.

We have here a property owner whose free use and enjoyment of his home is materially impaired. We have a company maintaining a warehouse in which heavy metals are stored and moved from time to time. The respondent is making every effort to reduce to a minimum the noises which have inconvenienced the complainants in the past. These efforts have already resulted in a great reduction in the noises heard by the complainants. The efficient operation of the warehouse cannot possibly be had without some noise, and the maintenance of the warehouse is essential in the industrial efficiency of the respondent's manufacturing business. Efficient operation of this plant is necessary to our country in the prosecution of the war.

Mr. Chief Justice Schaffer (then Mr. Justice Schaffer) in Elliott Nursery Co. v. Duquesne Light Co., 281 Pa. 166, 173 (1924), said:

"It is still the equitable rule that 'The chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing, and leaving the party to his redress at the hands of a court and jury': Richards's App., 57 Pa. 105, 113."

The opinion then went on to discuss the community interest in the activity sought to be enjoined. Considering the factors mentioned above, in the light of this opinion, it is quite clear that the circumstances of this case should not move the chancellor to grant equitable relief.

The complainants have not made out a case of irregularity in the proceedings before the zoning commission which authorized the construction of the warehouse. For that reason the chancellor has refused to interfere with the zoning commission's permit. As a matter of fact, so far as the disturbance is concerned, the erection of the warehouse has considerably lessened the discomfort to the complainants and has proved beneficial rather than detrimental to the complainants' enjoyment of their property.

### Conclusion of law

The complainants are not entitled to an injunction or any other equitable relief.

### Decree nisi

And now, to wit, December 23, 1942, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that the complainants' bill be dismissed, the costs, however, to be paid by the respondent. This decree to become final unless exceptions are filed within 10 days from the date hereof.